J-S03037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MIGUEL BONES | |
| Appellant | No. 1417 EDA 2015 |

Appeal from the Judgment of Sentence November 5, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004122-2011

BEFORE: FORD ELLIOTT, P.J.E., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.: **FILED JANUARY 22, 2016**

Appellant Miguel Bones appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his guilty plea conviction for rape[1] and unlawful contact with a minor.[2] We affirm.

The trial court set forth the relevant procedural history as follows:

Appellant was arrested February 25, 2011 and charged with Rape - Forcible Compulsion,[] Involuntary Deviate Sexual Intercourse ("IDSI") - Forcible Compulsion,[4] Unlawful Contact With a Minor - Sexual Offenses,[] Unlawful Restraint - Serious-Bodily Injury,[6] Statutory Sexual Assault,[7] False Imprisonment,[8] Endangering the Welfare of Children - Parent/Guardian Commits Offense,[9]

_____

[1] 18 Pa. C.S. § 3121(a)(1).

[2] 18 Pa. C.S. § 6318(a)(1).

Corruption of Minors,[10] Simple Assault,[11] and Recklessly Endangering Another Person ("REAP").[12]

[4] 18 Pa.C.S. § 3123(a)(1).

[6] 18 Pa.C.S. § 2902(a)(1).

[7] 18 Pa.C.S.§3122.1.

[8] 18 Pa.C.S. § 2903(a).

[9] 18 Pa.C.S. § 4304(a)(1).

[10] 18 Pa.C.S. § 6401(a)(1).

[11] 18 Pa.C.S. § 2701.

[12] 18 Pa.C.S. § 2705.

On July 30, 2013, Appellant entered a negotiated guilty plea to the charges of Rape – Forcible Compulsion and Unlawful Contact With a Minor - Sexual Offenses. All other charges were nolle prossed. At that time, Appellant was sentenced on the charge of Rape [] to nine (9) to twenty–one (21) years of state confinement; the sentence for Unlawful Contact was deferred pending an assessment pursuant to Megan's Law. *See* 42 Pa.C.S. § 9799.24.

On August 7, 2013, Appellant filed a timely *pro se* [p]ost [s]entence [m]otion to [w]ithdraw his [g]uilty [p]lea, averring that: his guilty plea was coerced; he was "not properly informed what was lawful and unlawful;" he was unable to comprehend due to emotional instability and trauma; that he rescinded all signatures waiving his right to a trial; that he was "coerced . . . under fraud and deception by all parties by deceiving petitioner to believe the said court has subject matter jurisdiction;" and that there was no subject matter jurisdiction because "accused persons get charged/indicted not by laws, but by codified versions of laws. WHICH ARE NOT LAWS AT ALL! . . ."; averred that Appellant was not made aware that this court was operating under "statutory jurisdiction, a jurisdiction which rules are unknown . . ."; and further averred that he was unaware of being considered a "STRAWMAN /CORPORATION and only knows himself to be a Living Being, Flesh and Blood, living breathing soul," etc. Essentially, Appellant raised arguments typical of the

Sovereign Citizen Movement but did not explain why the trial c]ourt did not have subject jurisdiction to sentence him, other than his argument that the statutes were not laws.[13]

[13] **See** Southern Poverty Law Center, "Sovereign Citizens Movement," http://www.splcenter.org/get-informed/intelligence-files/ideology/sovereign-citizens-movement.

On August 27, 2013, counsel for Appellant filed a [s]upplemental [p]ost [s]entence [m]otion, arguing that Appellant's plea was not knowing, intelligent or voluntary, and that he had not been adequately informed of the consequences of his guilty plea, specifically that he would not be permitted to withdraw the plea under Pa.R.Crim.P. 591. Appellant averred that he was told by the [trial c]ourt that if he were found guilty after a trial, he could face seventy six (76) to a hundred fifty two (152) years [and that this information] caused undue duress such that under the circumstances his plea was coerced; and that he was innocent of the charges against him.

On November 15, 2013, following a hearing on Appellant's [m]otion at which Appellant refused to state his name for the record, [the trial c]ourt denied his [m]otion to [w]ithdraw his [g]uilty [p]lea.

On December 12, 2014, [the trial c]ourt held a hearing to determine whether Appellant was a sexually violent predator.[3] Following the hearing, [the trial c]ourt sentenced Appellant to ten (10) years of reporting probation [on the unlawful contact with a minor conviction] to run consecutive to his incarceration in accordance with his plea negotiations.

On December 19, 2014, Appellant filed a *pro se* [p]ost [s]entence [m]otion, arguing that [the trial court] had erred in sentencing him to ten (10) years of probation to run consecutive to his confinement and averred that at the

_____

[3] The trial court found Appellant was not a sexually violent predator. N.T., 12/12/2014, at 72.

time of the guilty plea, Appellant's counsel "made it clear on the record . . . that the plea agreement was 9-21 years['] incarceration for the charge of Rape and ten years['] probation to run concurrent for the charge of Unlawful Contact."

On February 17, 2015, Appellant filed an [a]mendment to his [p]ost [s]entence [m]otion, again arguing that his sentence was illegal and that [the trial c]ourt lacked jurisdiction to impose it upon him.

On April 18, 2015, Appellant's [m]otions were denied by [o]peration of [l]aw.

Opinion, 7/24/2015, at 1-3. Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises the following issues on appeal:

1. Was not [A]ppellant's guilty plea invalid where, during the plea colloquy, [A]ppellant clearly indicated that he could not fully read, write and understand English, and therefore, the colloquy was not sufficiently adequate to ensure that he understood and was aware of his rights and the consequences of the plea?

2. Did not the trial court err by denying [A]ppellant's post-sentence motion attacking the validity of his guilty plea and by terminating his hearing, solely because [A]ppellant did not state his name for the record?

Appellant's Brief at 3.

Appellant has waived his first issue, i.e., that his guilty plea was involuntary because he could not fully read, write and understand the English language.

"A defendant wishing to challenge the voluntariness of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to

withdraw the plea within ten days of sentencing." ***Commonwealth v. Lincoln***, 72 A.3d 606, 609-10 (Pa.Super.2013) (citing Pa.R.Crim.P. 720(A)(1), (B)(1)(a)(i)). "Failure to employ either measure results in waiver." ***Id.*** at 610 (citing ***Commonwealth v. Tareila***, 895 A.2d 1266, 1270 n. 3 (Pa.Super.2006)). Further:

> [F]or any claim that was required to be preserved, [an appellate court] cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court. Thus, even if an appellant did seek to withdraw pleas or to attack the discretionary aspects of sentencing in the trial court, the appellant cannot support those claims in this Court by advancing legal arguments different than the ones that were made when the claims were preserved.

***Id.*** (quoting ***Commonwealth v. Rush***, 959 A.2d 945, 949 (Pa.Super.2008)).

Following imposition of sentence for the rape conviction, Appellant filed a *pro se* motion to withdraw his guilty plea and his counsel filed a motion in support of the motion to withdraw the guilty plea. The motions did not claim Appellant's guilty plea was involuntary because he did not understand the English language. Rather, the *pro se* motion, which was hand-written in English, argued the plea was coerced, Appellant was not "properly informed what was lawful and unlawful," and Appellant was unable to comprehend the guilty plea due to "emotional instability and trauma." Motion to Withdraw Guilty Plea, 8/7/2013, at ¶¶ 2-3. The motion also raised various subject matter jurisdiction arguments. ***Id.*** at 5-16. The counsel's motion in support of motion to withdraw the guilty plea stated the plea was not knowing,

intelligent or voluntary because Appellant had not been informed of the consequences of his guilty plea, i.e., he was not informed that, because he was immediately sentenced, he would not be permitted to withdraw the plea. Motion in Support of Petitioner's Post-Sentence Motion, 8/27/2013, at ¶5. It further maintained the timing and manner in which the trial court informed Appellant he could face 76 to 152 years' imprisonment coerced Appellant into pleading guilty. *Id.* at ¶ 6. Neither motion argued, or even mentioned, Appellant's alleged inability to read, write, or understand the English language. Therefore, the legal theory advanced in this Court differs from the theory advanced in the trial court, and Appellant waived his first claim. *See Lincoln*, 72 A.3d at 610.[4]

_____

[4] Further, the 1925(b) statement did not challenge the voluntariness of the waiver based on Appellant's understanding of the English language. The 1925(a) statement raises the following issues:

> a. The trial court erred by denying [A]ppellant's motion for withdrawal of his guilty plea without holding a full hearing, despite the fact that [A]ppellant would not identify himself for the record.
>
> b. The trial court erred by denying [A]ppellant's motion for withdrawal of his guilty plea, where the plea colloquy was not sufficiently adequate to ensure that appellant understood and was aware of his rights and the consequences of his plea and, therefore, the entry of his plea was invalid.
>
> c. The trial court erred and abused its discretion when it imposed a sentence of ten years['] probation for the charge of unlawful contact of a minor to run consecutive to [A]ppellant's sentence of incarceration for rape, where the

*(Footnote Continued Next Page)*

Further, even if Appellant had properly preserved the claim, it lacks merit. At the colloquy, the trial court and Appellant had the following exchange:

THE COURT: [] How old are you, sir?

[APPELLANT]: Twenty-eight years old.

THE COURT: How far did you go in school?

[APPELLANT]: Graduated high school.

THE COURT: Can you read, write, and understand English?

[APPELLANT]: Yes, for the most part[,] yes.

THE COURT: [Do y]ou have any issues understanding English, reading, or writing?

[APPELLANT]: Not really.

THE COURT: Have you ever been or are you currently receiving treatment for any mental illness?

[APPELLANT]: Not currently receiving any treatment but yes, I have.

THE COURT: What was your diagnosis, sir?

[APPELLANT]: Bipolar, post-traumatic stress disorder, manic depressant, hyperactivity disorder.

_(Footnote Continued)_ ——————

negotiation for the plea was for the probation to run concurrent to the sentence of incarceration.

Supplemental Statement of Errors Complained of on Appeal, filed 6/1/2015, at ¶ 5. This statement does not clarify that Appellant sought relief on an alleged inability to understand English, particularly as no trial court motion or evidence alleged such an inability.

THE COURT: When were you diagnosed with those ailments?

[APPELLANT]: Around 1998.

THE COURT: Were you prescribed any medications or any course of treatment?

[APPELLANT]: Yes.

THE COURT: Are you still in treatment for those ailments?

[APPELLANT]: No.

THE COURT: Are you under any medication to treat those ailments?

[APPELLANT]: No.

THE COURT: [Do y]ou require medication at all at this point in time?

[APPELLANT]: No.

THE COURT: When was the last time you required any medication for any of those?

[APPELLANT]: The last time I did take my medication was probable a year ago.

THE COURT: Do you feel that you have the ability to understand what's happening here today?

[APPELLANT]: Yes.

THE COURT: Are you presently under the influence of any drugs or alcohol or medication at all that would prevent you from understanding what's happening here today?

[APPELLANT]: No.

THE COURT: I'm going to refer you to this written guilty plea colloquy form, did you go over this form with your attorney?

[APPELLANT]: Yes.

THE COURT: Did you understand the form?

[APPELLANT]: Yes.

> THE COURT: I'm going to direct your attention to the bottom of page three of four, is that your signature at the bottom of that form, sir?
>
> [APPELLANT]: Yes.
>
> THE COURT: Did you sign it of your own free will?
>
> [APPELLANT]: Yes.

N.T., 7/30/2013, at 3-5. The trial court also discussed the rights Appellant was giving up by pleading guilty and confirmed that Appellant was not made any promises in exchange for his guilty plea and was not threatened or forced to plead guilty. *Id.* at 6-10.

Appellant bases his claim that he did not understand the English language on the following: (1) he responded "yes, for the most part[,] yes," when asked whether he could read, write and understand English; (2) he responded "not really," when asked whether he had any issues understanding English, and (3) the below exchange that occurred at the hearing on his motion to withdraw his guilty plea:

> COURT CRIER: Case number ten. In a loud voice for the record state your full name, home address.
>
> [APPELLANT]: I don't understand. What do you want me to do?
>
> COURT CRIER: State your full name and home address.
>
> [APPELLANT]: I don't understand why I have to do that.
>
> COURT CRIER: Sir, state your full name and home address.
>
> [APPELLANT]: There was no identity. I shouldn't have to be here.

> THE COURT: If you want your Motion heard, you have to state your name on the record or your Motion will not be heard today.
>
> [APPELLANT]: I don't understand why I have to identify myself.
>
> THE COURT: If you don't identify yourself, your Motion wont' be heard. All right. You can take him back, Sheriff.
>
> Motion is denied. He refuses to identify himself[.]

N.T., 11/15/2013, at 4-5.

The guilty plea colloquy, in its entirety, established Appellant understood English. He accurately answered the questions, which were asked in English, and responded in full, complete sentences, also in English. Further, the exchange at the post-sentence motion hearing does not establish Appellant did not understand English. Appellant understood the request, i.e., state his name for the record, but did not understand why he had to state his name. The claim he did not understand why he had to state his name aligns with his arguments that the court lacked jurisdiction over him. Appellant's contention that his guilty plea was unknowing and involuntary because he did not understand English lacks merit.

Appellant next maintains the trial court erred when it denied Appellant's post-sentence motion attacking his guilty plea when it terminated the hearing on the motion because Appellant would not state his name. Appellant's Brief at 14-17.

Pursuant to the Pennsylvania Rules of Criminal Procedure, if a defendant files a post-sentence motion, "[t]he judge shall also determine

- 10 -

whether a hearing or argument on the motion is required, and if so, shall schedule a date or dates certain for one or both." Pa.R.Crim.P. 720(B)(2)(b).

The trial court denied the motion to withdraw Appellant's guilty plea following Appellant's refusal to state his name for the record. N.T., 11/15/2013, at 4-5. Regardless whether the trial court erred when it denied the motion based on this refusal, without reference to the court's review of the motions to withdraw and without further attempts to ascertain Appellant's cooperation with the hearing proceedings, any error was harmless. In its 1925(a) opinion, the trial court explained its denial of the motion to withdraw the guilty plea as follows:

> [T]o withdraw a guilty plea after sentencing, an Appellant must demonstrate prejudice on the level of "manifest injustice" before such a withdrawal is justified. **Commonwealth v. Pantalon**, 957 A.2d 1267, 1271 (Pa.Super.2008) (citation omitted). This showing may "be established if the plea was entered into voluntarily, unknowingly, or unintelligently." **Commonwealth v. Yeomans**, [24 A.3d 1044, 1046] (Pa.Super.Ct. 2011). This is a difficult standard to meet, as Pennsylvania's guilty plea procedures are designed to guarantee assurance that guilty pleas "are voluntarily and understandingly tendered." **Yeomans**, 24 A.3d at 1046. The extensive colloquy process requires courts to make a specific determination as to the voluntariness and understanding of such a plea. **Id.**
>
> At a minimum, courts have established that the following information should be elicited at a colloquy. **Yeomans**, 24 A.3d at 1047; Pa.R.Crim.P. 590. Does the defendant understand the nature of the charges to which he is pleading guilty; is there a factual basis for the plea; does the defendant understand that he or she has the right to

- 11 -

trial by jury; is the defendant aware of the permissible range of sentences and fines for the offenses charged; is the defendant aware that the judge is not bound by the terms of any plea agreement tendered. *Id.* Whether the plea was knowing and voluntary is a totality of the circumstances determination, thus, even if there is a defect in one aspect of the colloquy, a plea will not be found invalid if the defendant had a "full understanding of the nature and consequences of his plea and that he knowingly and involuntarily decided to enter the plea." ***Commonwealth v. Fluharty***, [632 A.2d 312, 314-315] (Pa.Super.1993). Finally, the law presumes that an Appellant who enters a guilty plea was aware of what he was doing, and it is his burden to prove otherwise. ***Yeomans***, 24 A.3d at 1047. As noted above, [the trial court] conducted an extensive colloquy of Appellant to ensure that his guilty plea was knowing, intelligent, and voluntary. Appellant stated that he had graduated high school, [and] could read, write, and understand the English language. N.T.[,] 7/30/13[,] at 3. Although Appellant had been diagnosed with bipolar disorder, he stated that he did not require medication, and was not under the influence of any drugs, alcohol, or medication that would impair his abilit[y] to understand what was occurring. N.T.[,] 7/30/13[,] at 4-5. Appellant had reviewed the guilty plea colloquy form with his attorney and agreed to plead guilty, understanding that he could be incarcerated for at least sixty (60) years, and that he had an absolute right to a jury trial. N.T.[,] 7/30/13[,] at 5-6. Appellant understood that his appellate rights would be limited, and he could only appeal on the grounds that [the trial court] did not have jurisdiction to hear Appellant's case, that the plea was involuntary, or that Appellant's attorney was ineffective. N.T.[,] 7/30/13[,] at 7-8. Appellant stated that, despite knowing all of the above, he wished to plead guilty and was pleading guilty of his own free will. N.T.[,] 7/30/13[,] at 10.

Following this extensive colloquy, [the trial court] found that Appellant's decision to plead guilty was knowing, intelligent, and voluntary, and accepted his plea. N.T.[,] 7/30/13[,] at 10-11. The colloquy was sufficient to inform Appellant of his rights and the consequences of his plea, and Appellant's Motion indicated no further facts that could

allow [the trial court] to conclude that his plea was not voluntary; thus, Appellant is not entitled to relief on this claim.

Opinion, 7/24/2015, at 8-9. This was not error.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/22/2016